William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
**BROOKS KUSHMAN P.C.**
601 S. Figueroa Street, Suite 2080
Los Angeles, CA 90017
Tel.: (213) 622-3003

Mark A. Cantor (Admitted *Pro Hac Vice*)
Rebecca J. Cantor (Admitted *Pro Hac Vice*)
Marc Lorelli (Admitted *Pro Hac Vice*)
mcantor@brookskushman.com
rcantor@brookskushman.com
mlorelli@brookskushman.com
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, MI 48075
Tel.: (248) 358-4400/Fax: (248) 358-3351

*Attorneys for Plaintiff*
*Kitsch LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Kitsch LLC, a California company,<br><br>                  Plaintiff,<br>v.<br><br>DEEJAYZOO, LLC, a New York company,<br><br>                  Defendant. | Case No.  2:19-cv-02556-JAK-RAO<br><br>**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>
<u>**AND JURY DEMAND**</u>

Plaintiff Kitsch LLC ("Kitsch"), by and through its undersigned counsel, for its Complaint against DEEJAYZOO, LLC ("DEEJAYZOO" or "Defendant"), states as follows:

## I.    PARTIES

1.    Plaintiff Kitsch is a Limited Liability Company organized under the laws of California, having a principal place of business at 307 N. New Hampshire, Los Angeles, California 90004.

2.    On information and belief, Defendant DEEJAYZOO, LLC is a Limited Liability Company organized under the laws of the State of New York, having a principal place of business at 337 Kent Avenue, Brooklyn, New York 11249.

## II.    JURISDICTION AND VENUE

3.    As detailed below, an actual case or controversy exists between Kitsch and the Defendant as to whether Kitsch has infringed or is infringing one or more valid and enforceable claims of U.S. Patent No. 10,021,930 (the "'930 Patent"), U.S. Design Patent No. D775,792 (the "'792 Patent"), whether Kitsch has infringed U.S. Trademark Registration No. 5,208,472 (the "'472 Registration"), whether the '930 Patent, '792 Patent, and/or '472 Registration are invalid, and whether the '930 Patent and/or '792 Patent is unenforceable.

4.    The Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202.

5.    Venue and personal jurisdiction are appropriate in this Court under 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial part of the events and omissions giving rise to Kitsch's claims occurred in this District.

6.     A case or controversy exists between Kitsch and Defendant because Defendant has accused Kitsch and its customers of patent and trademark infringement and has threatened litigation.

7.     Upon information and belief, Defendant does business in this state and in this District.

## III.     FACTUAL BACKGROUND

### A.     Kitsch and Kitsch's Shower Cap Products

8.     Kitsch is a leading accessories manufacturer with products including, hair ties, headbands, and jewelry, including rings, necklaces, earrings and other fashion accessories. Today, Kitsch products can be found in over 2,000 locations worldwide and has sold to large retailers such as Nordstrom, Anthropologie, Free People, Kitson, Urban Outfitters, Paper Source, W Hotels, Francesca's and more. Kitsch additionally operates an e-commerce website that serves thousands of retail customers worldwide.

9.     One of the many accessories Kitsch designed and manufactures is a fashion shower cap, an example of which is shown below:



10.     Among other venues, Kitsch advertises and sells its shower caps at Paper Source and Urban Outfitters.

11.     When Kitsch first began selling its shower caps, it used the descriptive phrase "the shower cap reinvented" to describe the products. Kitsch has ceased its use of this phrase.

**B.     Defendant's Wrongful Conduct**

12.     DEEJAYZOO is a competitor of Kitsch that also sell shower caps.

13.     On or around July 19, 2018, Defendant, through its attorneys, sent a letter to Kitsch accusing Kitsch of infringing the '930 Patent, '792 Patent, and '472 Registration. *See* Exh. 4. The letter also stated that "DEEJAYZOO vigorously defends its valuable intellectual property rights." *Id*.

14.     On or around August 8, 2018 Kitsch responded to Defendant's July 19, 2018 letter explaining why Defendant's allegations were unfounded. *See* Exh. 5.

15.     On or around August 28, 2018, Defendant responded to Kitsch's August 8, 2018 letter stating, *inter alia*, "[a]bsent Kitsch's confirmation that it has ceased the marketing and sale of its infringing products, DEEJAYZOO *will be forced to explore its alternatives*." *See* Exh. 6 (emphasis added).

16.     On or around December 18, 2018, Defendant again threatened Kitsch with litigation by sending an email stating "Deejayzoo expects nothing less than complete cessation of the sale of the infringing products and is prepared to enforce its rights as necessary." *See* Exh. 6.

17.     Defendant continued its threatening behavior towards Kitsch by sending cease and desist letters to at least two of Kitsch's clients—Paper Source and Urban Outfitters. *See* Exhs. 7 and 8, respectively. In the letter to Paper Source, Defendant repeated its statement that "DEEJAYZOO vigorously defends its valuable intellectual property rights." Exh. 7. And in the letter to Urban Outfitters,

Defendant stated that Defendant intended to "obtain relief from a proper tribunal regarding Kitsch's infringement." Exh. 8.

18.     In light of Defendant's repeated threats of litigation against Kitsch, an actual case or controversy exists between the parties.

## C.      Kitsch Does Not Infringe the '930 Patent

19.     DEEJAYZOO purports to be the owner of the '930 Patent, which was filed on August 27, 2015 and matured into a patent on July 17, 2018. *See* Exh. 1. The '930 Patent claims priority to the '792 Patent. The '930 Patent, entitled "Noise Reducing Water Resistant Headpiece," seven claims that are generally directed towards a shower cap. *Id*. Claim 1 is the only independent claim of the '930 Patent, and the remaining claims each depend from claim 1. Claim 1 is reproduced below:

A covering apparatus comprising:

a unitary material;

a grip;

an elastic member;

a gathered band; and

an elongated band;

wherein the gathered band and the elongated band are of a unitary construction;

wherein the gather band and the elongated band are attached to a periphery of the covering apparatus;

wherein the elastic member is enclosed within the gathered band;

wherein the unitary material comprises an outer layer and an inner layer;

wherein the outer layer comprises a fabric;

wherein the outer layer is water repellent;

wherein the inner layer is polyurethane;

wherein the covering apparatus comprises a plurality of folds;

wherein the plurality of folds culminate in a point at a front of the covering apparatus above the elongated band;

wherein the elastic member is located at a rear of the covering apparatus;

and wherein the covering apparatus is a shower cap.

*Id.*

20.     The Kitsch shower cap does not meet many of the limitations of the '930 Patent. For example, the grip and elongated band in the Kitsch shower cap are not of unitary construction but are instead made from two distinct pieces of fabric as shown below:



Multi-piece Construction



Unitary Construction

Similarly, the folds in the Kitsch shower cap do not culminate in a point in the front of the shower cap, but rather end at different points around the perimeter in the front of the shower cap as shown below:



Folds End at Multiple Points



FIG 1

Folds End at Single Point

The Kitsch shower caps are also made of a single layer of fabric, not two layers as required by the claims. The foregoing are non-limiting examples of the reasons for which the Kitsch shower cap does not infringe the '930 Patent.

**D.    The '930 Patent is Invalid**

21.    The '930 Patent on August 27, 2015. The '930 Patent is a continuation in part of the '792 patent. The '930 Patent is not entitled to a priority date any earlier than its filing date of August 27, 2015. Because the '930 patent was filed after September 16, 2012, it is governed by the America Invents Act.

22.    The '930 Patent is invalid for failure to comply with 35 U.S.C. § 103 in light of at least one or more of the following pieces of prior art: (1) the TLC Shower Cap; (2) the Louvelle Amelie Shower Cap; (3) the Louvelle Dahlia Shower Cap; and/or (4) German Patent No. DE2708558.

23.   The TLC Shower Cap was sold at least as early as 2012 and thus constitutes prior art to the '930 Patent. Attached as Exhibit 9 is a claim chart showing how the TLC Shower Cap renders the '930 Patent obvious under 35 U.S.C. § 103.

24.   The Louvelle Amelie Shower Cap was sold at least as early as August 2014 and thus constitutes prior art to the '930 Patent. Attached as Exhibit 10 is a claim chart showing how the Louvelle Amelie Shower Cap renders the '930 Patent obvious under 35 U.S.C. § 103.

25.   The Louvelle Dahlia Shower Cap was sold at least as early as August 2014 and thus constitutes prior art to the '930 Patent. Attached as Exhibit 11 is a claim chart showing how the Louvelle Dahlia Shower Cap renders the '930 Patent obvious under 35 U.S.C. § 103.

26.   German patent DE2708558 was issued on August 31, 1978 and thus constitutes prior art to the '930 Patent. A true and correct copy of DE2708558 is attached hereto as Exhibit 12 and a machine translation of DE2708558 is attached hereto as Exhibit 13. Attached as Exhibit 14 is a claim chart showing how DE2708558 renders the '930 Patent obvious under 35 U.S.C. § 103.

27.   In September 2006, Prada debuted its Spring 2007 ready-to-wear line included the following turban:



This turban shall be referred to as the "Prada Turban." Attached as Exhibit 15 is a claim chart showing how the Prada Turban renders the '930 Patent obvious under 35 U.S.C. § 103

28.     The '930 Patent is also invalid for failure to comply with 35 U.S.C. § 112(a) and (b). Claim 1 of the '930 Patent requires the outer layer be "water repellant" and claim 6 requires the fabric is "antimicrobial" or "breathable." Yet none of these terms are not defined or described anywhere in the specification. The inclusion of these terms in the claims thus violates the requirement under 35 U.S.C. § 112(a) that the specification contain a written description of the invention and the requirement under 35 U.S.C. § 112(b) that the specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor regards as the invention."

29.     The foregoing is based on Kitsch's investigation to date. Kitsch's invalidity investigation is ongoing, and Kitsch believes there may be additional bases for invalidity that will be found through discovery and Kitsch's continued investigation.

**E.     Kitsch Does Not Infringe the '792 Patent**

30.     DEEJAYZOO is also the owner of the '792 Patent, which was filed on October 10, 2014 and matured into a patent on January 10, 2017. *See* Exh. 2. The '792 Patent, entitled "Noise Reducing Water Resistant Headwear Cap," lists a single claim for "the ornamental design for a noise reducing water resistant headwear cap" as illustrated in the patent. *Id.*

31.    The Kitsch shower cap does not infringe the '792 Patent because an ordinary observer would not consider the design in the '792 Patent and the design of the Kitsch show cap to be substantially the same. This is because, as shown below, in the design of the '792 patent, the folds in the front of the shower cap cover the majority of the band around the bottom of the shower cap, the folds are equally spaced around the front of the shower cap, and the band around the bottom of the shower cap is significantly smaller. The Kitsch shower cap does not contain any of these features:



F.    **The '792 Patent is Invalid**

32.    Unlike utility patents that protect the manner in which a product is used and functions (35 U.S.C. §101), design patents only protect the way a product looks, i.e., the ornamental design characteristics embodied in or applied to the product (35 U.S.C. §171). The scope of protection afforded under a design patent is limited to the ornamental aspects of the claimed article alone and does not extend to any of the article's functional elements.

33.    The '792 Patent discloses an article that is entirely functional, given that the entire shower cap is designed to "provide[] a more relaxing shower experience by reducing the volume experienced by a user of said shower cap." *See* Exh. 1 at col. 1, ll. 15-16.  The functionality of the shower cap claimed in the '792

Patent is confirmed by the fact that Defendant claimed all of the purportedly "ornamental" features in the '930 Patent, including the material (and that the material can comprise "a plurality of digitally sublimated designs"), the grip (and the material from which the grip is made), the elastic band, the elongated band, the gathered band, the folds which "culminate in a point at a front of the covering apparatus." *Id* at Claims.

34.  In addition, the '792 Patent is rendered invalid under 35 U.S.C. §103 by the Prada Turban, which has the same ornamental design as shown in the '792 Patent.

35.  The foregoing is based on Kitsch's investigation to date. Kitsch's invalidity investigation is ongoing, and Kitsch believes there may be additional bases for invalidity that will be found through discovery and Kitsch's continued investigation.

**G.    The '930 and '792 Patent are Unenforceable**

36.  In addition, the '930 Patent and the '792 Patent are  unenforceable because the inventor intentionally withheld material information from the PTO during the prosecution of the '930 Patent and the '792 Patent.

37.  As described above, in 2006 Prada debuted the Prada Turban in its 2007 Spring Ready-To-Wear Line.

38.  Jaquelin De Jesu, the sole inventor of the '930 Patent and the '792 Patent, was aware of the Prada Turban when she designed the purported inventions claimed in the '930 Patent and the '792 Patent.  Additionally, Ms. De Jesu knew that the Prada Turban was highly relevant prior art because she specifically presented it as such during a 2017 design conference, yet at the same time, Ms. De Jesu willfully withheld this same prior art from the USPTO.

39.  Indeed, on September 15, 2017, Ms. De Jesu gave a presentation at the 2017 Brand New Conference in Chicago, Illinois. During this speech, Ms. De Jesu

displayed a number of prior art turbans from the 1920s through the 2000s, including the Prada Turban. This is shown in the following screenshot from her speech:



40.    While she was showing the audience this screenshot, Ms. De Jesu specifically stated that she chose the turban style because "Where I started was that I knew I wanted it to be chic and timeless. So turbans as a category felt right. They've been on runways and on women's heads for the better part of this past century and they had a resurgence in the 2000s."

41.    During the 2017 Brand New Conference, Ms. De Jesu also displayed what appears to be her first sketches of the shower cap, which contain multiple elements that both matched the Prada Turban and were essential to the prosecution of the '930 Patent and the '792 Patents as shown in the annotated images below:



42.    During her 2017 Brand New Conference speech, Ms. De Jesu also emphasized the importance of getting patent protection for her design. For example, when discussing the development process Ms. De Jesu noted that she contacted a patent attorney regarding protection before she had even come up with a design, stating "I treated this like it was a thing before it was a thing. I called a patent lawyer" while showing the following slide:



43.    Ms. De Jesu again emphasized the importance of patent protection later in the speech, stating "I wanted [the shower cap] to be recognizable. I wanted it to be ownable. And I wanted it to be patentable so that when it was ownable I could sue them" while showing this slide:



44.    Despite the fact that Ms. De Jesu was aware of the Prada Turban when she filed the applications that led to the '930 and '792 Patents, she never disclosed the existence of the Prada Turban to the USPTO.

45.    When the examiner issued his Notice of Allowability for the '792 Patent, he included "reasons for allowance" (Ex. 16).  There, he explained that the design claimed in the '792 patent was allowable specifically because of the gathering of folds in the front:

> Very similar designs were found when searching for prior art that included an encircling band along the base of the headwear with gathered portions of the cap. ***However, no prior art references were found to teach the gathering of the front portion of the headwear as shown in the claimed design***.
>
> For instance, the claimed design includes gathering of the front portion of the headwear cap that begins at the top of the encircling band in the center and radiates outward forming multiple pleats of an unexpected

appearance. ***Given the unique configuration of these pleats, the claimed design appeared distinct from the prior art***, so no prior art rejection was made.

(Ex. 16; emphasis added.)

46.    As shown below, however, the Prada Turban has the exact same arrangement of pleats (folds) in the front as the cap claimed in the '792 Patent. And since the examiner specifically relied on the absence of this feature in the prior art, it would have been highly material for the examiner to learn that there was a prior art turban that contained these pleats.



47.    During prosecution of the application that led to the '930 Patent, the examiner rejected the application on the basis that a prior art reference, Damman, "includes a plurality of folds." (Ex. 17.)

48.    On October 30, 2017—just 45 days after Ms. De Jesu made her presentation at the New Brand Conference in which she presented that the Prada Turban was prior art, Ms. De Jesu, submitted an amendment and response to the

Office Action in which she amended the claims to include a plurality of folds that culminate in a single point and argued that the invention claimed in the '930 patent was patentable over the prior art *because the prior art did not teach a plurality of folds in which each of the folds culminated at a single point in the front of the cap*. (Ex. 18 at 9-11.)

49.     As a result of these amendments and arguments, Ms. De Jesu was ultimately able to overcome the rejection to the plurality of folds limitation based on Damman. It therefore would have been highly material for the examiner to learn that there was a prior art turban that contained these pleats.

50.     Additionally, on March 15, 2017, the examiner rejected the application that led to the '930 Patent based on Damman in view of another prior art reference called Saunders. (Ex. 19.) In this rejection, the examiner noted that disclosed a shower cap with an elastic member that is enclosed in the back. (*Id.*)

51.     On June 14, 2017, Ms. De Jesu, filed an amendment and response to overcome the March 15, 2017 rejection. In the amendment Ms. De Jesu, *inter alia*, added the limitations that the elastic member be located at the rear of the cap and not extend around the entire periphery of the cap. (Ex. 20.) Ms. De Jesu then argued that the amended claims were patentable because, *inter alia*, Damman taught an elastic band that extended around the entire perimeter of the cap whereas the amended claims only had an elastic member in the rear of the shower cap:

> Dammann does not teach at least the claim limitation of amended claim 1 and new claim 25 of "*wherein the elastic member does not extend around an entire perimeter of the unitary material*." The Office Action identifies item "108.1" of Dammann as the claimed "*elastic member*" (See, e.g., Figure 1A reproduced below):



FIG. 1A

As shown above, Dammann's alleged "*elastic member*" — i.e., item "108.1" -- **extends around the entire perimeter of the alleged "unitary material" — item "100".** In contrast, a shower cap meeting the claim limitation of "*wherein the elastic member does not extend around an entire perimeter of the unitary material*" is shown with respect to Figures 9 and 10 of the as-published application below:



FIG. 9

FIG. 10

As detailed above, the elastic member is shown as item "102" and only limited to a portion of the perimeter of the unitary material — i.e., "*the elastic member does not extend around an entire perimeter of the unitary material*." Accordingly, since Dammann teaches an elastic member that extends around the entire perimeter of the unitary material, Dammann does not teach at least the claim limitation of "*wherein the elastic member does not extend around an entire perimeter of the unitary materia*l."

Moreover, the secondary reference, Saunders, does not remedy the deficiencies of Dammann. Accordingly, Dammann and Saunders, separately or in combination, does not render independent claims 1 and 27 are obvious.

(*Id.* at 10-11; emphasis in original.)

52.     As a result of these amendments and arguments, Ms. De Jesu was ultimately able to overcome the rejection to the elastic member based on Damman in light of Saunder. It therefore would have been highly material for the examiner to learn that there was a prior art turban (*i.e.*, the Prada Turban) that contained an elastic member in the back of the turban only as shown in the image below:



53.     As the named inventor and the applicant on the applications that led to the '930 Patent and '792 Patent, Ms. De Jesu had a duty to disclose to the USPTO all information known to her to be material to patentability under in 37 C.F.R. § 1.56. Ms. De Jesu's attorneys also had a duty of candor to the USPTO. *Id.*

54.     Because Ms. De Jesu knowingly failed to disclose material information to the USPTO with an intent to deceive the USPTO, she committed inequitable conduct and the '930 Patent and '792 Patent are unenforceable.

**H.     Kitsch Does Not Infringe the '472 Registration**

55.     Deejazoo has stated that it is the owner of the '472 Registration for THE SHOWER CAP REINVENTED. *See* Exhs. 3 and 4. The application that led to the

'472 Registration was filed on September 27, 2016 and the '472 Registration issued on May 23, 2017.

56.     Despite obtaining a registration for THE SHOWER CAP REINVENTED, Deejayzoo does not use the ® with THE SHOWER CAP REINVENTED mark on its product.

57.     Even if the mark of the '472 Registration is registrable, which it is not, there is no likelihood that consumers would be confused between the Kitsch shower cap and Defendant's product. This is because, *inter alia*, Kitsch has only ever used the mark in close proximity to its KITSCH trademark and, as such,  no reasonable consumer would be confused regarding the source of Kitsch's products.

**I.     The '472 Registration Should be Canceled**

58.     The mark of the '472 Registration, THE SHOWER CAP REINVENTED, should be canceled is descriptive because it describes precisely what Defendant has claimed to do, *i.e.*, reinvent the shower cap. As such, THE SHOWER CAP REINVENTED is only protectable upon a showing of secondary meaning. Here, the SHOWER CAP REINVENTED has not obtained secondary meaning and, as such, is not protectable.

**IV.    COUNT I
DECLARATION OF NON-INFRINGEMENT**

59.     Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

60.     As described herein, Kitsch is not infringing, and has not infringed, directly, by inducement, contributorily, or in any way, either literally or under the doctrine of equivalents, any valid and enforceable claims of the '930 Patent.

61.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Kitsch requests a declaration from the Court that Kitsch does not and has not infringed the '930 Patent.

## V.    COUNT II
## DECLARATION OF PATENT INVALIDITY

62.    Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

63.    The claims of the '930 Patent are invalid under at least 35 U.S.C. §§103 and 112 for the reasons described above in Paragraphs 21-27 and the exhibits referenced therein.

64.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Kitsch requests a declaration from the Court that the '930 Patent is invalid.

## VI.    COUNT III
## DECLARATION OF NON-INFRINGEMENT

65.    Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

66.    As described herein, Kitsch is not infringing, and has not infringed, directly, by inducement, contributorily, or in any way, either literally or under the doctrine of equivalents, any valid and enforceable claims of the '729 Patent.

67.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Kitsch requests a declaration from the Court that Kitsch does not and has not infringed the '729 Patent.

## VII.   COUNT IV
## DECLARATION OF PATENT INVALIDITY

68.    Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

69.    The claim of the '729 Patent is invalid under at least 35 U.S.C. § 171 as being directed towards functional subject matter for the reasons described above in Paragraphs 31-32.

70.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Kitsch requests a declaration from the Court that the '729 Patent is invalid.

## VIII.   COUNT V
## DECLARATION OF NON-INFRINGEMENT

71.     Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

72.     As described herein, there is no likelihood of confusion between Kitsch's former packaging and the mark of the '472 Registration.

73.      Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Kitsch requests a declaration from the Court that Kitsch does not and has not infringed the '472 Registration.

## IX.    COUNT VI
## CANCELLATION OF THE '472 REGISTRATION

74.     Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

75.     The '472 Registration is not registrable because it is descriptive and has not obtained secondary meaning.

76.     Kitsch is or will be damaged by the continued existence of the '472 Registration.

77.     Kitsch thus requests that this Court order the U.S. Patent and Trademark Office to cancel the '472 Registration pursuant to 15 U.S.C. §§ 1064 and 1119.

## X.    COUNT VII
## DECLARATION OF UNENFORCEABILITY

78.     Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

79.     The '930 Patent is unenforceable due to inequitable conduct.

80.     As the inventor and applicant of the '930 Patent, Ms. De Jesu owed a duty of candor and good faith to the USPTO with respect to the prosecution of the '930 Patent.

81.     As described herein, Ms. De Jesu failed to comply with this duty of candor by not disclosing the Prada Turban to the USPTO.

82.     Had the USPTO known about the Prada Turban, it would not have granted the '930 Patent.  Thus, the information Ms. De Jesu withheld from the USPTO was material.

83.     The single most reasonable inference able to be drawn from the evidence is that Ms. De Jesu intended to deceive the USPTO by withholding highly material information.

84.     As a result of Ms. De Jesu's failure to disclose the Prada Turban with an intent to deceive the USPTO, Ms. De Jesu committed inequitable conduct, thereby rendering the '930 patent unenforceable.

## XI.   COUNT VIII
## DECLARATION OF UNENFORCEABILITY

85.     Kitsch repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

86.     The '792 Patent is unenforceable due to inequitable conduct.

87.     As the inventor and applicant of the '792 Patent, Ms. De Jesu owed a duty of candor and good faith to the USPTO with respect to the prosecution of the '792 Patent.

88.     As described herein, Ms. De Jesu failed to comply with this duty of candor by not disclosing the Prada Turban to the USPTO.

89.     Had the USPTO known about the Prada Turban, it would not have granted the '792 Patent.  Thus, the information Ms. De Jesu withheld from the USPTO was material.

90.     The single most reasonable inference able to be drawn from the evidence is that Ms. De Jesu intended to deceive the USPTO by withholding highly material information.

91.     As a result of Ms. De Jesu's failure to disclose the Prada Turban with an intent to deceive the USPTO, Ms. De Jesu committed inequitable conduct, thereby rendering the '792 patent unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

a.     A declaration that Kitsch does not infringe and has not infringed any claims of the '930 Patent or '792 Patent;

b.     A declaration that the '930 Patent and '792 Patent are invalid under 35 U.S.C. §§102, 103 and 112;

c.     A declaration that Kitsch does not infringe the '472 Registration;

d.     An Order directing the U.S. Patent and Trademark Office to cancel the '472 Registration;

e.     A declaration that the '930 Patent and '792 Patent are unenforceable;

f.     A declaration that this is an exceptional case and award Kitsch its costs, disbursements, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and/or 15 U.S.C. § 1117; and

g.     Such other and further relief as the Court may deem just and proper.

Dated: _____          Respectfully submitted,

                                By: /s/ Rebecca J. Cantor
                                Mark A. Cantor (Admitted *Pro Hac Vice*)
                                Rebecca J. Cantor (Admitted *Pro Hac Vice*)
                                Marc Lorelli (Admitted *Pro Hac Vice*)

mcantor@brookskushman.com
rcantor@brookskushman.com
mlorelli@brookskushman.com
BROOKS KUSHMAN P.C.
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tel:(248) 358-4400/Fax: (248) 358-3351


William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
**BROOKS KUSHMAN P.C.**
601 S. Figueroa Street, Suite 2080
Los Angeles, CA 90017
Tel.: (213) 622-3003

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff Kitsch LLC demands trial by jury of all issues in this action so triable.

Dated: June 17, 2020

Respectfully submitted,

By: /s/ Rebecca J. Cantor
Mark A. Cantor (Admitted *Pro Hac Vice*)
Rebecca J. Cantor (Admitted *Pro Hac Vice*)
Marc Lorelli (Admitted *Pro Hac Vice*)
mcantor@brookskushman.com
rcantor@brookskushman.com
mlorelli@brookskushman.com
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, MI 48075
Tel: (248) 358-4400/Fax: (248) 358-3351

William E. Thomson, Jr. SBN 47195)
wthomson@brookskushman.com
**BROOKS KUSHMAN P.C.**
601 S. Figueroa Street, Suite 2080
Los Angeles, CA 90017
Tel.: (213) 622-3003

*Attorneys for Plaintiff*