1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

William E. Thomson, Jr. (SBN 47195)
wthomson@brookskushman.com
**BROOKS KUSHMAN P.C.**
445 S. Figueroa Street, Suite 3100
Los Angeles, CA 90071-1635
Tel: (213) 622-3003

Mark A. Cantor (*Pro Hac Vice*)
Marc Lorelli (*Pro Hac Vice*)
Rebecca J. Cantor (*Pro Hac Vice*)
mcantor@brookskushman.com
mlorelli@brookskushman.com
rcantor@brookskushman.com
**BROOKS KUSHMAN P.C.**
1000 Town Center, Twenty-Second Floor
Southfield, MI 48075
Tel: (248) 358-4400/Fax: (248) 358-3351

*Attorneys for Plaintiff*
*Kitsch LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| Kitsch LLC, a California company,<br><br>    Plaintiff/Counter-Defendant,<br>v.<br><br><br>DEEJAYZOO, LLC, a New York company,<br><br>    Defendant/Counter-Plaintiff. | Case No. 2:19-cv-02556-JAK-RAO<br><br>Hon. John A. Kronstadt<br>Magistrate Judge Rozella A. Oliver<br><br>**PLAINTIFF KITSCH LLC'S MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS** |

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ............................................................................................. ii

3   I.      INTRODUCTION ..................................................................................................1

4   II.     FACTUAL BACKGROUND...................................................................................2

5   III.    LEGAL STANDARD .............................................................................................5

6

7   IV.     ARGUMENT...........................................................................................................6

8           A.     Kitsch is the Prevailing Party ...................................................................6

9           B.     DJZ's Shifting Positions Render this Case Exceptional .......................7

10          C.     The Court Should Award Kitsch Its Fees ..............................................8

11  V.      CONCLUSION........................................................................................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum In Support of Motion for Attorneys' Fees
And Non-Taxable Costs
Case No. 2:19-cv-02556-JAK-RAO                                        i

# TABLE OF AUTHORITIES

## Cases

*Chicago Bd. Opt. Exch., Inc. v. Sec. Exch., LLC*,
    2014 WL 6978644 (N.D. Ill. Dec. 10, 2014) ...................................................... 5

*Gaymar Indus. v. Cincinnati Sub-Zero Prods.*,
    790 F.3d 1369 (Fed. Cir. 2015) ...................................................................... 6

*In re PersonalWeb Techs., LLC et al., Pat. Litig.*,
    2020 WL 5910080 (N.D. Cal. Oct. 6, 2020) ...................................................... 7

*Inland Steel Co. v. LTV Steel Co.*,
    364 F.3d 1318 (Fed. Cir. 2004) ...................................................................... 6

*Nova Chems. Corp. v. Dow Chem. Co.*,
    856 F.3d 1012 (Fed. Cir. 2017) ...................................................................... 6

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ............................................................................. 5, 6

*Oplus Techs., Ltd. v. Vizio, Inc.*,
    782 F.3d 1371 (Fed. Cir. 2015) ...................................................................... 7

*Source Search Techs., LLC v. Kayak Software Corp.*,
    2016 WL 1259961 (D.N.J. Ma. 31, 2016) ........................................................ 7

*SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*,
    839 F.3d 1129 (9th Cir. 2016) ...................................................................... 6

## Statutes

15 U.S.C. § 1117 ................................................................................... 2, 6, 8
35 U.S.C. § 285 .................................................................................... 2, 6, 8

Memorandum In Support of Motion for Attorneys' Fees
And Non-Taxable Costs
Case No. 2:19-cv-02556-JAK-RAO        ii

# I.    INTRODUCTION

This case was never close. Defendant DeeJayZoo LLC ("DJZ") knew that Plaintiff Kitsch LLC's ("Kitsch") accused shower cap had a large bow that would preclude an ordinary observer from finding infringement of DJZ's design patent. DJZ also knew that its asserted trademark, THE SHOWER CAP REINVENTED, described the DJZ product. Instead of admitting these facts, however, DJZ's founder, CEO, and 30(b)(6) witness testified during her deposition that consumers would not be able to see the large bow on Kitsch's shower caps and that THE SHOWER CAP REINVENTED did not describe DJZ's product. Based on this testimony, Kitsch declined to move for summary judgment regarding the validity of DJZ's trademark. Kitsch did move for summary judgment of noninfringement of DJZ's design patent. The Court, however, denied Kitsch's motion in part based on DJZ's 30(b)(6) testimony.

The case subsequently proceeded to trial. During trial, the same witness reversed her sworn testimony and testified that consumers could see the bow on Kitsch's shower cap and that THE SHOWER CAP REINVENTED described DJZ's products. The jury subsequently found, after minimal deliberation, that Kitsch's shower cap did not infringe DJZ's design patent and that THE SHOWER CAP REINVENTED was descriptive and unprotectable.

The only reason these questions were able to get to a jury is because DJZ's owner and principal witness changed her testimony between her deposition and the trial. Had DJZ's witness testified the same way during her deposition as she did at trial, Kitsch could have moved for summary judgment that THE SHOWER CAP REINVENTED was invalid as descriptive. And the Court would not have been able to rely on the witnesses testimony to find that there was a question of material fact as to whether the Kitsch shower caps infringed DJZ's design patent. In other words, by changing its testimony, DJZ needlessly prolonged this case.

1    DJZ's actions in this case are inexcusable and render this case exceptional under

2    35 U.S.C. § 285 and 15 U.S.C § 1117.  The Court should thus award Kitsch the non-

3    taxable costs and attorneys' fees incurred in litigating this case after the Court issued

4    its summary judgment order.

5                        **II.    FACTUAL BACKGROUND**

6        The Court is generally familiar with the facts of this case. Kitsch brought this

7    case in 2019 alleging, *inter alia*, that Kitsch's shower caps did not infringe DJZ's

8    design patent number D775,792 (the "'792 Patent"), DJZ's utility patent number

9    10,021,930 (the "'930 Patent"), and that DJZ's registration for THE SHOWER CAP

10   REINVENTED was descriptive. (*See* Dkt. 1.) During the litigation, Kitsch took the

11   position that its shower caps did not infringe the '792 Patent because, *inter alia*, they

12   contained a large bow that did not exist in the '792 Patent. With respect to the

13   trademark Kitsch argued, *inter alia*, that Kitsch could not infringe DJZ's THE

14   SHOWER CAP REINVENTED trademark because the trademark was descriptive and

15   therefore not protectable under the Lanham Act.

16       In an effort to support its claims and defenses, Kitsch took significant discovery

17   in this case, including the deposition of Jaquelyn De Jesu, the sole named inventor of

18   the '792 Patent, the owner of DJZ, and the person who purportedly decided to use the

19   phrase the SHOWER CAP REINVENTED. In particular, Kitsch asked Ms. De Jesu

20   about the bow on the Kitsch shower cap and the meaning of the phrase THE SHOWER

21   CAP REINVENTED. With respect to the bow, Ms. De Jesu testified that consumers

22   could not see the bow on the Kitsch design:

23       Q.    Do you believe that a consumer can visually see the bow in the

24       Kitsch design?

25       A.    No.

26   (Ex. 1, De Jesu Dep. Tr. at 168:15-17.) When looking at an image of the Kitsch shower

27   cap, Ms. De Jesu further testified that she couldn't see the bow "because its almost

28

completely blended in as camouflage on the pleats in the lines, its' really hard to tell that it's even there. (*Id.* at 190:17-24.)

With respect to THE SHOWER CAP REINVENTED, Ms. De Jesu emphatically testified that the trademark was not descriptive:

> Q. Okay. So "The Showercap Reinvented" was something that you came up with, right?
>
> A. I did.
>
> Q. And you – why did you come up with or what was the purpose of coming up with that phrase?
>
> A. I mean, we make and sell waterproof turbans, the tag line is "The Showercap Reinvented." It felt like a good way to suggest what the – the product was.
>
> Q. Doesn't it describe what you were intending to do?
>
> A. No. As stated earlier, we're a female-focused design and innovation company and we sell waterproof turbans, so for me, those are substantially different things.

(*Id.* at 92:13-24.)

After taking this deposition, Kitsch filed a motion for summary judgment that its shower caps did not infringe the '792 Patent as well as the '930 Patent. Kitsch did not move for summary judgment on its claim that THE SHOWER CAP REINVENTED was descriptive. The Court denied Kitsch's motion. (*See* Dkt. 238 at PageID.11444-11446.) In denying Kitsch's motion, the Court gave particular weight to Ms. De Jesu's testimony that an ordinary consumer could not necessarily see the bow because it was camouflaged by the pleats and lines. (*Id.* at PageID.11446.)

After the Court denied Kitsch's motion for summary judgment, the parties prepared for and proceeded to trial. During trial, Kitsch called Ms. De Jesu to the stand to testify and asked her the same questions mentioned above regarding the bow on

Kitsch's shower cap and the descriptiveness of THE SHOWER CAP REINVENTED mark. At trial, however, Ms. De Jesu had very different answers to these questions than she did at her deposition. In particular, Ms. De Jesu unequivocally testified that a consumer could see the bow in the Kitsch shower cap:

> Q.    Do you believe that a consumer can visually see the bow in the Kitsch design. Yes or no?
> A.    Yes.

(Ex. 2; Tr. Tr. Day 3 at 46:5-7.) Ms. De Jesu was then asked why her testimony changed between the deposition and trial. Ms. De Jesu was unable to offer any cogent explanation, instead merely stating "I believe it's been three years. And, again, we've had a lot of time in the market." (*Id.* at 47:17-23.) She went on, however, to reaffirm that consumers can see the bow on the Kitsch shower cap. (*Id.* at 47:24-48:1.)

When asked whether THE SHOWER CAP REINVENTED was descriptive, Ms. De Jesu again testified unequivocally that it was:

> Q.    You used the phrase "The Showercap Reinvented" to describe the product you sell in the marketplace; correct?
> A.    Yes.

(*Id.* at 39:24-40:1.)

Had Ms. De Jesu testified during her deposition the same way she did during the trial, it is quite possible that this case could have been decided on summary judgment. Indeed, the Court may well have found that Ms. De Jesu's admissions regarding the bow on the Kitsch shower cap were sufficient to show there was no genuine issues of material fact as to whether an ordinary observer would buy the Kitsch shower cap believing it to be the design of the '792 Patent. Similarly, if Kitsch had Ms. De Jesu's admission that THE SHOWER CAP REINVENTED was descriptive, it could have moved for summary judgment on this claim. Put another way, DJZ and, in particular,

1  Ms. De Jesu's testimony, deprived the Court and Kitsch of an opportunity to resolve

2  the case earlier, and forced the Court and Kitsch to expend a great deal of time, money,

3  and other resources on an unnecessary trial.[1]

4  ### III.   LEGAL STANDARD

5  This Court may award reasonable attorneys' fees to the "prevailing party" in

6  "exceptional cases." 35 U.S.C. § 285. In *Octane Fitness, LLC v. ICON Health &*

7  *Fitness, Inc.*, 572 U.S. 545 (2014), the Supreme Court overruled the Federal Circuit's

8  "unduly rigid" standard for finding a case "exceptional," and lowered the burden of

9  proof. *Id.* at 553. Rather, § 285 "imposes one and only one constraint on district courts'

10  discretion to award attorney's fees in patent litigation: The power is reserved for

11  'exceptional' cases." *Id.*  "Exceptional" means "'uncommon,' 'rare,' or 'not

12  ordinary.'"

13
14
15
16
17
> [That is,] one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

18  *Id*. at 554.  Thus, "only one of *Octane Fitness's* two prongs is required" to award fees

19  under § 285. *Chicago Bd. Opt. Exch., Inc. v. Sec. Exch., LLC*, No. 07-cv-623, 2014

20  WL 6978644, at *5 (N.D. Ill. Dec. 10, 2014). As opposed to proving both, "either

21  subjective bad faith or exceptionally meritless claims may" set a case "apart from mine-

22  run cases to warrant a fee award." *Octane Fitness*, 572 U.S. at 555.

23

24  _____

25  [1] In connection with the '930 patent, DJZ voluntarily dropped that patent just prior to trial after the U.S. Patent and Trademark Office found the claims of that patent to be

26  unpatentable based on a reexamination request filed by Kitsch. Notwithstanding, Kitsch was forced to incur substantial costs and fees in defending against this patent

27  prior to DJZ's voluntarily dropping this claim.

28

Whether a case meets this standard as "exceptional" is vested in this Court's discretion, based on a preponderance of evidence, under the totality of circumstances. *Octane Fitness*, 572 U.S. at 553-54.  An exceptional case analysis focuses on the conduct of the losing party. E.g., *Gaymar Indus. v. Cincinnati Sub-Zero Prods.*, 790 F.3d 1369, 1377 (Fed. Cir. 2015) (reversing and remanding denial of fees where denial was based on conduct of prevailing party).  Fees may be awarded where "a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Octane Fitness*, 572 U.S. at 555.  Thus, "sanctionable conduct is not the appropriate benchmark." *Id*. "The substantive strength of a party's litigating position[]—i.e., whether it is objectively baseless—[can] independently support an exceptional-case determination." *Nova Chems. Corp. v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).

15 U.S.C. § 1117 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Ninth Circuit has held that in determining whether a case is exceptional under § 1117, the court must perform the same *Octane* analysis described above. *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1129, 1181 (9th Cir. 2016) ("district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case [is] exceptional").

## IV.   ARGUMENT

### A.   Kitsch is the Prevailing Party

DJZ cannot reasonably dispute that Kitsch is the prevailing party.  To "prevail" a party must "receive at least some relief on the merits, which alters" the parties' legal relationship. *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004). Here, Kitsch prevailed on every claim that was decided by the jury. (Dkt. No. 297). Kitsch is the prevailing party under § 285 and § 1117.

## B.     DJZ's Shifting Positions Render this Case Exceptional

As discussed above, DJZ and Ms. De Jesu in particular, prolonged this case by taking inconsistent positions between her deposition and trial in this matter. Courts, including the Federal Circuit, have previously held that a parties' changing positions can be the basis for a finding that a case is exceptional. *See Oplus Techs., Ltd. v. Vizio, Inc.,* 782 F.3d 1371, 1377 (Fed. Cir. 2015) (vacating district court's denial of fees where the plaintiff's "litigation positions, expert positions, and infringement contentions were a constantly moving target, a frustrating game of Whac–A–Mole throughout the litigation."); *see also Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388, 2016 WL 1259961, at *7 (D.N.J. Ma. 31, 2016) (granting fess where plaintiff "changed its positions back and forth to suit the argument of the day."); *In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 18-MD-02834-BLF, 2020 WL 5910080, at *11 (N.D. Cal. Oct. 6, 2020) (granting fees where, *inter alia*, plaintiff "frequently changed its infringement positions to overcome the hurdle of the day").

In *Source Search*, for example, the patentee asserted a patent related to a computerized quotation system. *Source Search*, 2016 WL 1259961, at *1. In arguing for patentability, the plaintiff argued that the claim was patentable because it "was no small task" to create the query required by the claim. *Id.*, at *7. In arguing for a broad claim construction, however, plaintiff stated that the query could have been easily made by software that had been around for decades. *Id.* And in arguing that its claim contained patentable subject matter, the plaintiff alleged that inventive specialized software was needed to make the query. *Id*. The court in *Source Search* found that these inconsistent and opposing positions made the case exceptional. *Id.*

Here, like the plaintiff in *Source Search*, DJZ took completely differing positions regarding the bow on the Kitsch shower cap and the descriptiveness of THE SHOWER CAP REINVENTED trademark. In both *Source Search* and the present case, these positions were completely irreconcilable. And, like in *Source Search*, DJZ's

1   inconsistent positions forced Kitsch to litigate long after the case should have been

2   over. Indeed, as explained above, had Ms. De Jesu's deposition testimony matched her

3   trial testimony, it is likely that summary judgment would have gone differently in this

4   case and that trial may well have been avoided. Moreover, DJZ's changing positions

5   means that this case stands out from others. Kitsch is thus entitled to the fees and costs

6   it incurred after the decision on the motion for summary judgment.

7   **C.      The Court Should Award Kitsch Its Fees**

8   Kitsch has incurred $793,420.50 in attorneys' fees and $287,137.72 in non-

9   taxable costs in defending the design patent and trademark claims after the Court

10  denied Kitsch's motion for summary judgment.[2] Being filed concurrently herewith is

11  the Declaration of Mark Cantor, which sets forth the attorneys' fees and non-taxable

12  costs associated with this case after the Court's denial of summary judgment along

13  with the supporting documentation. These fees and costs are reasonable based on the

14  nature and scope of this case. Kitsch therefore respectfully requests a total award of

15  attorneys' fees and non-taxable costs in the amount of $1,080,558.22. In addition,

16  Kitsch requests the Court award it the fees incurred in bringing this motion as well as

17  for all proceedings after July 31, 2023. Should the Court grant Kitsch these additional

18  fees, Kitsch will submit them to the Court once the briefing is complete, or they can be

19  submitted as incurred if the Court desires.

20  **V.      CONCLUSION**

21  Based on the foregoing, Kitsch respectfully requests the Court find this case

22  exceptional under § 285 and § 1117 and award Kitsch the attorneys' fees and non-

23

24

25

26  [2] Kitsch is filing its request for taxable costs with the Clerk under Rule 54. To the extent any of these requested taxable costs are not allowed, they should be awarded under this

27  motion.

28

1  taxable costs it has incurred in defending this case after the summary judgment

2  decision.

3  Dated:  September 8, 2023                    Respectfully submitted,

4

5                                                            By: /s/ Mark A. Cantor
                                                             Mark A. Cantor (Pro Hac Vice)
                                                             mcantor@brookskushman.com
6                                                            Marc Lorelli (Pro Hac Vice)
                                                             mlorelli@brookskushman.com
7                                                            Rebecca J. Cantor (Pro Hac Vice)
                                                             rcantor@brookskushman.com
8                                                            BROOKS KUSHMAN P.C.
                                                             1000 Town Center, 22nd Floor
9                                                            Southfield, MI 48075
                                                             T: (248) 358-4400/F: (248) 358-3351
10

11                                                           William E. Thomson, Jr. (SBN 47195)
                                                             wthomson@brookskushman.com
12                                                           BROOKS KUSHMAN P.C.
                                                             445 S. Figueroa Street, Suite 3100
13                                                           Los Angeles, CA 90071-1635
                                                             T: (213) 622-3003

14                                                              *Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28