UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson-Terrell | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS (DKT. 359); AND**

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, A NEW TRIAL (DKT. 362)**

**I.    Introduction**

On April 4, 2019, Kitsch LLC ("Kitsch" or "Plaintiff") filed this action against DeeJayZoo, LLC ("DeeJayZoo" or "Defendant"). Dkt. 1 (the "Complaint"). The Second Amended Complaint is the operative pleading. It seeks a declaration that U.S. Design Patent No. D775,792 (the "D792 Patent" or the "Patent") is invalid and not infringed by Kitsch's shower caps, and a declaration that U.S. Trademark Registration No. 5,208,472 (the "'472 Registration" or the "Shower Cap Reinvented Mark") is invalid and not infringed by the same products. Dkt. 70 at 20-23. On May 10, 2019, DeeJayZoo filed counterclaims against Kitsch. Dkt. 17. The operative version of those counterclaims include infringement of the '472 Registration and the associated Mark, infringement of the D792 Patent, and infringement of DeeJayZoo's rights in the unregistered mark "Shhhowercap" (the "Shhhowercap Mark"). *See* Dkt. 73.[1]

A jury trial on all the aforementioned claims began on June 6, 2023. Dkt. 330. On June 9, 2023, the jury reached a unanimous verdict as to all the claims. Dkt. 340. With respect to the D792 Patent, the jury determined that none of Kitsch's shower caps infringed the D792 Patent. *Id.* at 2. With respect to the Shower Cap Reinvented Mark, the jury determined that the Mark was descriptive and was not a valid and protectable trademark. *Id.* at 5. Finally, with respect to the Shhhowercap Mark, the jury determined that the Mark was a valid and protectable trademark, but that Kitsch's use of the word "Shhhowercap" did not infringe the trademark. *Id.* at 6.

On September 8, 2023, DeeJayZoo renewed its timely motion for judgment as a matter of law and, in the alternative, sought a new trial. Dkt. 362 (the "Motion"). On September 28, 2023, DeeJayZoo filed a notice of supplemental authority in support of the Motion. Dkt. 369 (the "Notice of Supplemental

---

[1] Initially, Kitsch also sought a declaration that one of DeeJayZoo's utility patents was invalid and not infringed by Kitsch's products. DeeJayZoo also filed a counterclaim for infringement of that utility patent against Kitsch. However, the claims related to the utility patent were later dropped from the case. *See* Dkt. 279.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

Authority"). On October 6, 2023, Kitsch filed its opposition to the Motion. Dkt. 370 (the "Opposition"). Kitsch also filed a response to the Notice of Supplemental Authority. Dkt. 371 (the "Response to Supplemental Authority"). On October 13, 2023, DeeJayZoo filed a reply brief in support of the Motion. Dkt. 377 (the "Reply"). On October 20, 2023, Kitsch filed a sur-reply, which was permitted as to a new issue that DeeJayZoo raised in the Reply. Dkt. 378 (the "Sur-Reply").

On September 8, 2023, Kitsch also filed its own motion for an award of attorney's fees and taxable costs. *See* Dkt. 360 (the "Attorney's Fees Motion"). On October 6, 2023, DeeJayZoo opposed the Attorney's Fees Motion. Dkt. 372 (the "Attorney's Fees Opposition"). On October 13, 2023, Kitsch filed a reply brief in support of the Attorney's Fees Motion. Dkt. 375 (the "Attorney's Fees Reply").

A hearing on these matters was held on November 13, 2023. For the reasons stated in this Order, the Motion is **DENIED,** and the Attorney's Fees Motion is **DENIED**.

**II.     Factual Background**

Because the parties are very familiar with the evidence and factual matters related to the Motions, only a brief summary of the relevant matters is included in this Order.

      A.     The D792 Patent

DeeJayZoo owns the D792 Patent. It issued on January 10, 2017, and is titled "Noise Reducing Water Resistant Headwear Cap." It is a design patent that claims, "the ornamental design for a noise reducing water resistant headcap." DeeJayZoo alleged infringement of the D792 Patent by Kitsch's accused products. Dkt. 17 at ¶ 67.

Figure 8 of the D792 Patent is "a perspective view of the noise reducing water resistant headwear cap . . . as worn by an individual in accordance with the present invention."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |



D792 Patent, Fig. 8.

  B. Asserted Trademarks

DeeJayZoo markets its shower caps under the federally registered trademark THE SHOWER CAP REINVENTED. Dkt. 17 at 3. DeeJayZoo has used this mark continuously since December 6, 2015. *Id.* The U.S. Patent and Trademark Office ("USPTO") issued the corresponding Registration No. 5,208,472 on May 23, 2017. *Id.* DeeJayZoo also uses the mark SHHHOWERCAP. DeeJayZoo uses these marks on its packaging as shown in the following image:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

*See* Dkt. 73 at 4.

### III. Analysis

#### A. Legal Standards

##### 1. Motion for Judgment Notwithstanding the Verdict (Renewed Motion for Judgment as a Matter of Law)

Judgment as a matter of law is warranted where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A motion for judgment as a matter of law under Rule 50(a) must be brought before the matter is submitted to the jury. Fed. R. Civ. P. 50(a)(2). If it is denied, it may be renewed, and "may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "A renewed motion for judgment as a matter of law is properly granted 'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.' " *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

The following standards apply to a renewed motion brought pursuant to Rule 50:

> A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion. While the court must review the entire evidentiary record, it must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe. If sufficient evidence is presented to a jury on a particular issue and if the jury instructions on the issue stated the law correctly, the court must sustain the jury's verdict.

*Id.* (internal citations and quotation marks omitted).

##### 2. Motion for a New Trial

Following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(a). This includes if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001) (quoting *United States v. 4.0 Acres of Land*, 175 F.3d 1133,1139 (9th Cir. 1999)). However, "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Id.* In assessing the clear weight of the evidence, "[t]he judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987). Even if substantial evidence precludes the entry of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

judgment as a matter of law, a court may grant a motion for a new trial. *Id.* "[E]rroneous jury instructions, as well as the failure to give adequate instructions, are also bases for a new trial." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

Fed. R. Civ. P. 61 also applies to the matters at issue. It provides:

> Unless justice requires otherwise, no error in admitting or excluding evidence -- or any other error by the court or a party -- is ground for granting a new trial, [or] for setting aside a verdict . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Under these standards, in considering a motion for new trial, the first step is to determine whether an error occurred. If it is determined that there was an error, the second step is to decide whether the error caused prejudice to the party seeking a new trial.

    B.    Application

DeeJayZoo has made three arguments in support of the Motion. *First*, the "The Shower Cap Reinvented" Mark has acquired secondary meaning and the jury erred by finding otherwise. *Second*, its motion *in limine* to exclude the testimony of Aki Choklat should have been granted. *Third*, its proposed jury instruction regarding the role of copying in the analysis of design patent infringement should have been given.

In addition to these arguments, in the Notice of Supplemental Authority, DeeJayZoo requests that *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363 (Fed. Cir. 2023) be considered in evaluating the jury's verdict. At the hearing on this matter, DeeJayZoo presented additional arguments as to whether its trademark registration for "The Shower Cap Reinvented" should be canceled.

    1.    <u>Whether the "The Shower Cap Reinvented" Mark Has Acquired Secondary Meaning</u>

"To prevail on its trademark infringement claim, [DeeJayZoo] must show that: (1) it has a valid, protectable trademark, and (2) that [Kitsch's] use of the mark is likely to cause confusion." *Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). "Merely descriptive marks . . . are not inherently distinctive and are therefore not entitled to automatic trademark protection, a merely descriptive mark can become protectable if it has acquired distinctiveness 'as used on or in connection with the applicant's goods in commerce.'" *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (quoting 15 U.S.C. § 1052(f)). "This acquired distinctiveness is referred to as 'secondary meaning.'" *Id.* "Although the plaintiff in a trademark action bears the ultimate burden of proof that his or her mark is valid, federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Id.* "If the plaintiff establishes that a mark has been properly registered, the burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable." *Id.* at 1114. However, "the registrant is not entitled to a presumption of secondary meaning unless the PTO required proof of secondary meaning as part of the application for registration of the mark." *Id.* at 1114 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

It is undisputed that DeeJayZoo obtained a federal registration for the "The Shower Cap Reinvented" Mark. Dkt. 349 at 28. DeeJayZoo does not contend that the PTO required it to provide proof of secondary meaning as part of its application. *See generally* Reply.

"Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1151 (9th Cir. 1999).

*First*, it is undisputed that DeeJayZoo did not present consumer surveys or other direct evidence of consumers' perception of the Mark. *See* Opposition at 22-23; Reply at 7. "[S]urvey evidence is not required to show likelihood of confusion." *Monster, Inc v. Dolby Laboratories Licensing Corp.*, 920 F. Supp. 2d 1066, 1072 (N.D. Cal. 2013). However, "survey evidence is 'often the most persuasive' evidence concerning likelihood of confusion." *Id.* (quoting *Carins v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998)). Because DeeJayZoo did not provide direct evidence of consumers' perception of the Mark, this factor supports the jury's verdict.

Although DeeJayZoo presented some evidence of actual confusion with respect to the "Shhhowercap" Mark, it did not present any evidence of actual confusion with respect to this Mark. Monika Garcia testified that she purchased a product by searching for the brand name "Shhhowercap," and the product as one produced by Kitsch. Dkt. 343-1 at 12. However, her testimony never referred to the phrase "The Shower Cap Reinvented." *See generally* Dkt. 343-1. In addition, the jury could have decided to give limited weight to Garcia's testimony. Garcia was seeking employment with DeeJayZoo at the time of the purchase and was employed by DeeJayZoo at the time of her testimony. *Id.* at 7-8, 11-12. Further, even if the jury had credited Garcia's testimony, one incident of confusion would not require the jury to find that the Mark had acquired secondary meaning.

*Second*, with respect to the exclusivity, manner, and length of use of the Mark, DeeJayZoo contends it provided evidence that it used the Mark to sell shower caps on a continuous basis since 2015. However, the evidence cited by DeeJayZoo is only that DeeJayZoo had been selling its shower caps since 2015. Dkt. 349 at 28. The evidence does not include that the Mark was used in an exclusive manner. *Id.* As to other evidence on this issue, a review of the trial transcripts does not reflect testimony by any witness that DeeJayZoo's use of the Mark was exclusive. Nor has either party identified anything about the manner in which the Mark was used that would support a finding of secondary meaning. In light of this evidence, the jury could have reasonably determined that this factor weighed against a finding of secondary meaning.

Even if the jury determined that this factor supported DeeJayZoo, several courts have rejected the argument that a lengthy period of exclusive use of a mark is sufficient to establish secondary meaning. *See, e.g.*, *Perfumania, Inc. v. Perfumay, Inc.*, 24 F.3d 248 (9th Cir. 1994), 1994 WL 168335, at *4; *Cont'l Lab'y Prod., Inc. v. Medax Int'l, Inc.*, 114 F. Supp. 2d 992, 1004 (S.D. Cal. 2000) ("[a] lack of evidence supporting the other factors relevant to secondary meaning . . . can diminish the probative value of even a long period of exclusive use," finding no secondary meaning despite four years of exclusive use, and collecting cases finding no secondary meaning despite a period of exclusive use as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

long as 40 years). The cases DeeJayZoo cites are distinguishable because they held that certain evidence was sufficient to support a verdict rather than that the evidence was sufficient to justify vacating the trial verdict. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 517 (9th Cir. 1989) (affirming a determination, after a bench trial, that secondary meaning had been established); *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1130 (Fed. Cir. 1993) (same); *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 544 (2d Cir. 1956) (holding, in the alternative and in dicta, there was enough evidence of secondary meaning to affirm the trial verdict).

*Third*, with respect to the amount and manner of advertising, DeeJayZoo contends it provided evidence that it advertised the Mark over several years. However, the evidence cited by DeeJayZoo consisted only of a snapshot of publications related to its shower caps from a six-month period in 2017. Dkt. 349 at 24; *see also* Dkt. 362-18. This exhibit was introduced into evidence. It consists of 149 pages, very few of which were published to the jury. Dkt. 362-18. Very few of the pages contain advertisements prepared by DeeJayZoo; instead, the exhibit contains articles and other materials prepared by journalists. *Id.* The Mark is visible only in a few of the pages. Further, even when it is visible, it is usually not prominent. *Id.* "To demonstrate secondary meaning based on advertising, the advertising must be of a 'nature and extent to create an association' with the advertiser's goods." *Art Attacks Ink, LLC v. MGA Entm't. Inc.*, 581 F.3d 1138, 1146 (9th Cir. 2009) (quoting *Dep't of Parks and Recreation v. Bazaar Del Mundo*, 448 F.3d 1118, 1128 (9th Cir. 2006)). Therefore, this exhibit would not compel a jury to conclude that the publications it includes would necessarily have led consumers to associate the Mark with DeeJayZoo's products. Finally, this evidence addresses only a limited time period. Although Ms. De Jesu testified that DeeJayZoo received similar attention before and after that six-month period (Dkt. 349 at 27), but the jury could have assigned little weight to this testimony because no corroborating evidence was presented. For these independent reasons, the jury could have reasonably determined that this factor weighed against a finding of secondary meaning.

*Fourth*, DeeJayZoo did not present evidence of the number of sales it made or the number of customers it had. *See* Opposition at 22; Reply at 7-10.

*Fifth*, neither party offered evidence with respect to whether DeeJayZoo had an established place in the market.

*Sixth*, with respect to intentional copying, DeeJayZoo presented some evidence that Kitsch copied the Mark. Specifically, Kitsch possessed DeeJayZoo's shower caps as well as their associated packaging. *See* Dkt. 347 at 45, 47, 52. However, this evidence would not have compelled the jury to find that DeeJayZoo copied Kitsch's packaging. The jury could also have credited the testimony of Cassandra Thurswell that she did not know this language was on the box and was not aware that anyone else, including DeeJayZoo, used the phrase "The Shower Cap Reinvented" on their products. Dkt. 346 at 192. DeeJayZoo contends that the jury could not have credited this testimony because Kitsch removed the Mark from its products after DeeJayZoo threatened litigation. However, Kitsch's decision to remove the Mark after DeeJayZoo informed Kitsch of its claimed rights in the Mark is also consistent with Kitsch's theory that, before that time, it did not know DeeJayZoo was using the Mark and had not intended to copy it.

Even if DeeJayZoo had presented evidence of copying, it would not compel the jury to find that the Mark acquired secondary meaning. "[P]roof of copying strongly supports an inference of secondary

Case 2:19-cv-02556-JAK-RAO    Document 389    Filed 12/21/23    Page 8 of 20    Page ID
#:15177

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

meaning." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989). Thus, competitors generally copy "to realize upon a secondary meaning that is in existence." *Audio Fid., Inc. v. High Fid. Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960). Furthermore, proof of intentional copying is only one factor among many. Because the jury had an appropriate basis to conclude that the previously identified factors supported Kitsch's position, it would not be appropriate to overturn the verdict even if DeeJayZoo had provided proof of intentional copying. DeeJayZoo cites several cases holding that evidence of deliberate copying was sufficient for the aggrieved party to obtain relief, but none of those cases was decided based on a trial verdict. *See, e.g.*, *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264 (9th Cir. 2001) (motion for summary judgment); *Vision Sports*, 888 F.2d at 615 (motion for preliminary injunction); *Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823 JLS (JLB), 2021 WL 3493094, at *13 (S.D. Cal. Aug. 6, 2021) (motion for default judgment).

DeeJayZoo contends that Kitsch introduced improper testimony from Jeremy Thurswell that the term "reinvented" is a common descriptive phrase in the beauty industry. However, DeeJayZoo did not object to the testimony. Without objection from DeeJayZoo, Mr. Thurswell testified that "it is common for beauty companies to say that they reinvented a product," that beauty companies do so because they "want a catchy phrase" but "can't say they actually invented something," that "reinvented" means "updated" or "improved," and that he knows of "quite a few" "companies who have advertised their products as being a reinvention." Dkt. 348 at 28-29. Although DeeJayZoo objected that Mr. Thurswell was reading "a hearsay document" into the record, that objection was sustained, and Mr. Thurswell was able to offer several examples of beauty companies using the word "reinvented" from memory. *Id.* at 29-31.

DeeJayZoo argues that "[t]he jury was . . . confused and was misled into believing that a descriptive mark cannot acquire secondary meaning." Motion at 21. However, the jury was instructed that the Mark could be valid even if it was descriptive so long as it had secondary meaning. Dkt. 337 at 25 ("If you determined that either asserted trademark is descriptive, you must consider the recognition that the mark has among prospective consumers in order to determine whether it is valid and protectable even though it is descriptive."). Similarly, the verdict form asked the jury to determine whether the trademark was valid and protectable even if the jury determined that the trademark was descriptive. Dkt. 340 at 5.

In the Reply, DeeJayZoo argues for the first time that Jury Instruction No. 20 was erroneous because it stated that the jury "must find that the preponderance of the evidence shows that a significant number of the consuming public associates [the relevant Marks] with DeeJayZoo . . . ." Dkt. 337 at 25. However, although DeeJayZoo objected to the need for this instruction,[2] DeeJayZoo never argued that the instruction was not an accurate statement of the elements required to prove secondary meaning. Consequently, its objection was not preserved. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1030 (9th Cir. 2003) ("[I]n order to preserve objections against jury instructions, a party must 'stat[e] distinctly the matter objected to *and the grounds of the objection.*'") (quoting Fed. R. Civ. P. 51).[3]

---

[2] Specifically, DeeJayZoo objected that "DeeJayZoo [did] not believe this instruction [was] needed because DeeJayZoo holds a valid registration to the mark SHHHOWER CAP." Dkt. 305 at 86. However, this objection was overruled because "the registrant is not entitled to a presumption of secondary meaning unless the PTO required proof of secondary meaning as part of the application for registration of the mark." *Zobmondo*, 602 F.3d at 1114 n.7.

[3] *See also Peden v. Suwannee Cnty. Sch. Bd.*, 837 F. Supp. 1188, 1195 (M.D. Fla. 1993), *aff'd sub nom. Peden v. Suwanee Cnty.*, 51 F.3d 1049 (11th Cir. 1995) ("objections to jury instructions or a verdict form are not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

Even if the objection had been preserved, it lacks merit. DeeJayZoo contends that the instruction required the jury to find that the public knew DeeJayZoo was using the Mark rather than requiring the jury to find only that the public associated the Mark with a single anonymous source. DeeJayZoo is correct that secondary meaning only "requir[es] association with only a single—even anonymous—source." *P & P Imports LLC v. Johnson Enterprises, LLC*, 46 F.4th 953, 960 (9th Cir. 2022). The instruction accurately stated this standard. It provided that "[a] word or phrase acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, *regardless of whether consumers know who or what that source is*." Dkt. 337 at 25 (emphasis added). Reading the instruction as a whole, the language to which DeeJayZoo now objects reflected only that DeeJayZoo was the "single source" to which the language above referred. Nothing in the instruction stated that consumers needed to know that the shower caps at issue came from DeeJayZoo. Even if the instruction had implied that secondary meaning could only be found if consumers knew that the shower caps came from DeeJayZoo, there is sufficient evidence that DeeJayZoo was not prejudiced by such a hypothetical error. As already stated, the jury was instructed that consumers did not need to know the source of the shower caps. Furthermore, Kitsch never argued that DeeJayZoo failed to show the Mark had acquired a secondary meaning because consumers did not know the source of the shower caps.

Based on a review of the trial record, there is sufficient evidence to support the jury's finding that the Mark did not acquire secondary meaning. Consequently, there is no basis to grant either judgment as a matter of law or a new trial.

    2.  <u>Whether Choklat's Testimony Should Have Been Excluded</u>

In the design patent context, infringement is determined from the perspective of an ordinary observer giving such attention as a purchaser usually gives to a product of that type. *Contessa Food Products, Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1381 (Fed. Cir. 2002). "An ordinary observer is a person who buys and uses the product at issue." *Hafco Foundry and Machine Co., Inc. v. GMS Mine Repair and Maintenance, Inc.,* 953 F.3d 745, 751 (Fed. Cir. 2020).

"The ordinary observer test is specifically not a test of what an expert might find" concerning infringement if that expert was comparing the products himself. *Famosa, Corp. v. Gaiam, Inc.,* 2012 WL 573999, *5 (S.D.N.Y. 2012). Instead, an expert may offer an opinion addressing the prior art and "us[ing] such language [as] 'in the eye of an ordinary observer'" to help the jury understand how the hypothetical ordinary-observer product-purchaser might make the relevant comparison. *Chico's Fas, Inc. v. Clair,* 2015 WL 2019369, *1-*5 (M.D. Fla. 2015) (denying motion to strike technical expert). Although experts with a background in design "cannot substitute [their] own views for those of the ordinary observer . . . excluding [their] opinion[s] on this ground would be needlessly restrictive" and, "like other critiques, this is a proper topic for cross-examination." *Glam and Glits Nail Design, Inc.*, Case

---

preserved" for purposes of a motion for a new trial "unless previously made at trial"); *cf. Kushner v. Hendon Const., Inc.*, 81 F.R.D. 93, 95 (M.D. Pa. 1979), *aff'd sub nom. Hendon Constr. Inc. v. Naholnik*, 609 F.2d 501 (3d Cir. 1979), and *aff'd sub nom. Kushner v. Hendon Constr. Inc.*, 609 F.2d 502 (3d Cir. 1979) (holding certain potential grounds for a new trial were waived where they were not raised in the "questions presented" section of the movant's opening brief).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

No. SA CV 20-88 JVS, 2022 WL 3012522, at *12 (C.D. Cal. June 24, 2022). Indeed, the party challenging expert testimony is "entitled to vigorous cross examination, as it sees fit." *Chico's*, 2015 WL 2019369, at *4.

Other cases have reached similar conclusions. *See, e.g.*, *Sun-Mate Corp. v. Koolatron Corp.*, No. CV 10-4735-JST JCGX, 2011 WL 3322597, at *5 (C.D. Cal. Aug. 1, 2011) ("[U]nder the refined ordinary observer test, an expert in the field of the prior art could prove helpful to the trier of fact in determining whether the two designs are substantially similar."); *N. Star Tech. Int'l Ltd. v. Latham Pool Prod., Inc.*, No. 3:19-CV-120-KAC-DCP, 2021 WL 11618037, at *10 (E.D. Tenn. Mar. 29, 2021) (considering "whether an expert may testify as to what an ordinary observer would observe," declining "to create a blanket rule that expert testimony is always helpful in a design patent case," but admitting the testimony at issue); *Delta T, LLC v. Dan's Fan City, Inc.*, No. 8:19-CV-1731-VMC-SPF, 2021 WL 458022, at *5 (M.D. Fla. Feb. 9, 2021) ("Although it is true that jury members would themselves be able to compare two objects to determine their similarity, it would help a jury to understand why certain designs might appear similar, and whether differences in designs actually impact their overall appearances."); *Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*, No. 1:18-CV-05385-SDG, 2020 WL 1800372, at *3 (N.D. Ga. Jan. 22, 2020) (considering expert testimony that accused design was "not substantially the same as that claimed in the [relevant] Patent," and rejecting argument that this was improper expert opinion).[4]

The courts that have rejected expert opinion on the "ordinary observer" issue have often done so because the witness has no particular qualifications and purports to be an ordinary observer themselves. *See, e.g.*, *Huang v. Marklyn Grp. Inc.*, No. 11-CV-01765-REB-BNB, 2014 WL 3559367, at *4 (D. Colo. July 18, 2014) ("lacking any expertise relevant to opine as to the perspective of the ordinary purchaser, [the proposed expert] is no more qualified than the jurors to offer these observations"), *order clarified on reconsideration sub nom. Yao-Hung Huang v. Marklyn Grp. Inc.*, No. 11-CV-01765-REB-BNB, 2014 WL 3733060 (D. Colo. July 29, 2014). Some courts have also limited experts' ability to proffer legal opinions on design patent infringement. *See, e.g.*, *Delta T*, 2021 WL 458022, at *5 ("To the extent that Rake plans to opine that the Vogue ceiling fan infringes on Delta T's patented designs or that they are 'substantially similar' under *Egyptian Goddess*, this is an impermissible legal conclusion, and is therefore excluded."); *N. Star*, 2021 WL 11618037, at *11 ("While the Court finds Phillips's factual analysis helpful to the jury, the Court does not find his legal conclusions helpful.").

DeeJayZoo's motion *in limine* to exclude Choklat's testimony was denied because it was determined that his testimony could be helpful to the jury. Choklat was subject to vigorous cross examination by counsel for DeeJayZoo, did not substitute his views for those of an ordinary observer, and had experience in fashion design and consumer reactions to fashion design that was helpful to the jury. The present Motion does not challenge Choklat's qualifications as an expert, but only whether his testimony was helpful to the jury. There is not a sufficient basis to show that it was error to admit Choklat's testimony.

The present Motion contests the denial of DeeJayZoo's motion *in limine*, but it does not identify any

---

[4] DeeJayZoo seeks to distinguish these cases on the basis that no party objected to the consideration of the expert testimony at issue. However, a review of these cases shows that the propriety of the expert testimony was challenged. Even if it had not been, these decisions concluded that expert testimony could be helpful to a jury as it applies the "ordinary observer" test, and their reasoning remains persuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

instance in which Choklat gave improper testimony. For the first time in its Reply, DeeJayZoo seeks judgment as a matter of law or a new trial based on the following series of questions and answers:

> Q. Now, is it your opinion that the hypothetical ordinary observer with knowledge of the prior art, giving the attention that a purchaser gives, would that hypothetical ordinary observer be deceived into purchasing the Kitsch shower cap, believing it to be the design of the 792 patent?
> A. The Kitsch shower cap, it's not similar to the -- not even substantially -- I'm sorry. It is not the same, and it's not even similar to the 792 patent.
> MR. SHAEFFER: Again, Your Honor, if I could reserve my objection.
> THE COURT: Yes. And, ladies and gentlemen, I read you instructions earlier on the role you will play, and the witness is being asked about the same -- the question you will be asked to decide. This is a decision for you based on all of the evidence.
> BY MR. LORELLI:
> Q. Now, we've been talking about the Kitsch bow-style design that's before you; right, Mr. Choklat?
> A. Right.
> Q. Is your opinion the same when we discuss the Kayley [Melissa] design?
> A. Yes, it is fundamentally the same opinion. The only difference between the Kayley [Melissa] design is there is a loop-style embellishment in the front as posed to the bow.

Dkt. 373 at 87-88.

Even if this issue had been raised in the Motion, it was not error to admit this testimony. The testimony was appropriately limited to the perception of an ordinary observer, rather than the perception of the expert. *See Chico's,* 2015 WL 2019369, at *3; *Glam and Glits*, 2022 WL 3012522, at *12. The jury was given an appropriate limiting instruction to ensure that they understood they were to decide "based on all of the evidence." Finally, although the question to the witness mentioned the hypothetical ordinary observer, the answer concerned the degree of similarity between the D792 Patent and the accused designs rather than the legal issue of whether they infringed the D792 Patent. Therefore, the witness did not proffer an improper legal opinion.

DeeJayZoo argues that Choklat's testimony could not have been helpful to the jury because the jurors were ordinary observers at the end of the trial after they were educated throughout the trial about the prior art. Motion at 26-27. However, DeeJayZoo ignores that the ordinary observer is a hypothetical person who, in addition to being knowledgeable regarding the prior art, also buys and uses the product at issue. There was no evidence that any of the jurors had ever bought or used the product at issue. Indeed, had any of them done so, they may have been challenged for cause during voir dire. Choklat's testimony was appropriate both to educate the jury about the prior art and to help the jury understand how the hypothetical ordinary-observer product-purchaser might make the relevant comparison.

The cases cited by DeeJayZoo are distinguishable. *Amini Innovation Corp. v. Anthony California Inc.*, No. CV 03-8749, 2006 WL 6855371 (C.D. Cal. Sept. 21, 2006); *Lawman Armor Corp. v. Master Lock Co.*, No. CIV. A. 02-6605, 2004 WL 440177 (E.D. Pa. Mar. 11, 2004), *aff'd*, 112 F. App'x 55 (Fed. Cir. 2004); and *Bush Indus., Inc. v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442 (D. Del. 1991) predated the current test for design infringement, which was adopted in 2008. *See Egyptian Goddess, Inc. v. Swisa,*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

*Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*). Even under the prior test, *Amini* held there were "aspects of the two part patent test . . . which require expert testimony." 2006 WL 6855371, at *8. *Bush* is also distinguishable because it held that expert testimony was unnecessary to decide a motion for summary judgment because the designs were too dissimilar to support a triable issue of fact as to infringement. 772 F. Supp. at 1450. *Bush* did not address the admissibility of expert testimony. *Id. Lawman* is similar: it cited *Bush* for the proposition that expert testimony did not create a triable issue of fact, but it did not address whether expert testimony would be helpful to a jury. 2004 WL 440177, at *8.

*In re Nalbandian*, 661 F.2d 1214, 1217 (C.C.P.A. 1981) is distinguishable because it addressed the appropriateness of expert testimony in determining obviousness rather than infringement. *Nalbandian* is also distinguishable on the basis that it prohibited the testimony of "an expert ordinary observer who might, thereby, persuade the person who is deciding the matter that the latter's judgment of the reaction of an ordinary observer is in error." *Id.* This restriction would not apply to an individual like Mr. Choklat who is an expert in design and was not offering an opinion where he is no more qualified than the jurors to offer observations. *Lanard* is distinguishable for the same reason. *Lanard Toys Ltd. v. Anker Play Prod., LLC*, No. CV 19-4350-RSWL-AFMX, 2020 WL 6873647, at *4 (C.D. Cal. Nov. 12, 2020) ("[I]t would constitute error to permit defendant to present, under the imprimatur of a so-called 'expert,' an opinion which the witness is, at best, no more qualified than the members of the jury to make.") (quoting *Huang*, 2014 WL 3559367, at *3). Again, Choklat had substantial relevant experience that could help the jury understand how the hypothetical ordinary-observer product-purchaser might make the relevant comparison.

DeeJayZoo argues that no reasonable factfinder could have found in Kitsch's favor on design patent infringement because Kitsch used DeeJayZoo's product when designing its own. *See* Motion at 27. Even assuming that this asserted fact is true, it would not establish that "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, . . . the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other . . . ." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1369 (Fed. Cir. 2023). The centerpiece of this analysis is a side-by-side comparison of the D792 Patent and Kitsch's designs, rather than an investigation into Kitsch's design process.[5] There were several differences between Kitsch's designs and the D792 Patent, including the bow, the band, the volume of fabric, the "bouffant" style, and the pleat patterns used in Kitsch's designs. *See* Dkt. 373 at 55-57, 73-74. The jury had a sufficient basis for finding for Kitsch on the infringement of the D792 Patent.

For the foregoing reasons, DeeJayZoo has not shown it is entitled to judgment as a matter of law or a new trial on this issue.

3.  <u>Whether DeeJayZoo's Proposed Jury Instruction No. 4 Should Have Been Given</u>

DeeJayZoo proposed a jury instruction stating that "[i]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." Dkt. 305 at 113. This test was derived from the following language of *Egyptian Goddess*:

---

[5] The accused infringer's design process may, however, be relevant to willfulness or other matters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

> This court has characterized the purpose of the point of novelty test as being "to focus on those aspects of a design which render the design different from prior art designs." *Sun Hill Indus., Inc.*, 48 F.3d at 1197, quoting *Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376 (Fed.Cir.1990). That purpose can be equally well served, however, by applying the ordinary observer test through the eyes of an observer familiar with the prior art. If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing. At the same time, unlike the point of novelty test, the ordinary observer test does not present the risk of assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 677 (Fed. Cir. 2008).

Based on this language, DeeJayZoo argues that "bad faith intent to copy [the patented product] is relevant to the fact-finder's determination on the issue of design patent infringement." Motion at 30. This is not an accurate statement of the law. "The test inquires whether an accused design appears 'substantially the same' as a patented design, such that 'an ordinary observer, giving such attention as a purchaser usually gives,' would be induced 'to purchase one supposing it to be the other.'" *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895, 898 (Fed. Cir. 2020) (quoting *Egyptian Goddess*, 543 F.3d at 678). This test describes an objective comparison of the accused design and the drawings in the design patent. It does not state that the accused infringer's design process or its intentions are relevant to infringement. The Federal Circuit has recently explained the significance of the language from *Egyptian Goddess* relied on by DeeJayZoo. "Comparison prior art can help highlight distinctions between the claimed and accused designs . . . [b]ut such art can also cut the other way—i.e., it can highlight *similarities* between the claimed and accused designs." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1377 (Fed. Cir. 2023) (quoting the relevant portion of *Egyptian Goddess* for support). Thus, *Egyptian Goddess* did not import either copying or bad-faith intent into the "ordinary observer" test. It merely indicated that comparison prior art may weigh in favor of a finding of infringement.

The cases cited by DeeJayZoo are also unpersuasive support. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1296 (Fed. Cir. 2010) did not cite the language from *Egyptian Goddess* relied on by DeeJayZoo, nor did it address the relevance of copying or bad-faith intent to design patent infringement. *Kao v. Snow Monster Inc.*, No. CV1708934RSWLGJSX, 2019 WL 2164192, at *2-*5 (C.D. Cal. May 16, 2019) is distinguishable for the same reason. DeeJayZoo's reliance on *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1216 (S.D. Cal. 2021), *motion to certify appeal granted*, No. 3:18-CV-02109-BEN-LL, 2021 WL 2072382 (S.D. Cal. May 24, 2021), and *aff'd sub nom. Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, No. 2021-2096, 2022 WL 2232517 (Fed. Cir. June 22, 2022) is also misplaced. Although *Golden Eye* cited the relevant portion of *Egyptian Goddess*, it did so to explain that the "ordinary observer" test is applied in light of the prior art, as in *Columbia Sportswear*, rather than to show that intentional copying is relevant to design patent infringement. *Id. Performance Designed Prod. LLC v. Mad Catz, Inc.*, No. 16CV629-GPC(RBB), 2016 WL 3552063, at *6 (S.D. Cal. June 29, 2016) is distinguishable for the same reason as *Golden Eye*. *Precor Inc. v. Life Fitness*, 13 F. App'x 913, 920 (Fed. Cir. 2001) is distinguishable both because it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

predated *Egyptian Goddess*, and because it held that the evidence of copying that had been presented did *not* support the jury's finding of infringement. Here, DeeJayZoo seeks to *overturn* a jury's finding of *non*-infringement. The balance of the cases cited by DeeJayZoo are unpersuasive because they relate to copyright and trademark infringement, rather than design patent infringement.

The relevant portion of *Egyptian Goddess*, read together with the entire opinion and other decisions by the Federal Circuit, did not teach that either copying or bad-faith intent is a part of the "ordinary observer" test. However, read in isolation, this portion of *Egyptian Goddess* could mislead the jury into believing that copying and bad-faith intent are appropriate factors for it to consider in determining whether Kitsch infringed the D792 Patent.[6] "Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014). "It is not the role of the Court's charge to confuse the jury with abstract propositions of law." *Peterson v. Mountain States Tel. & Tel. Co.*, 349 F.2d 934, 937 (9th Cir. 1965). Under these standards, it is appropriate to "consider whether the instructions—*taken as a whole* and *viewed in context of the entire trial*—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process." *Gracie v. Gracie*, 217 F.3d 1060, 1067 (9th Cir. 2000) (quoting *United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994)). Applying these standards, DeeJayZoo's proposed instruction was unnecessary because the jury was already instructed that "[t]he ordinary observer is considered to be familiar with prior art designs" and that the jury must determine whether the resemblance between Kitsch's products and the D792 Patent would "deceive an ordinary observer familiar with the prior art . . . ." Dkt. 337 at 17. A further instruction that the jury could use comparison prior art in support of a finding of infringement would have had little additional value, and DeeJayZoo's proposed instruction presented a high likelihood of misleading or confusing the jury.

### 4. Whether *Columbia Sportswear* Justifies a Different Outcome

"[T]o qualify as comparison prior art, the prior-art design must be applied to the article of manufacture identified in the claim." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1379 (Fed. Cir. 2023). In this respect, *Columbia Sportswear*, which was decided on September 15, 2023, presented an "issue of first impression" at the Federal Circuit. *Id.* at 1374.

DeeJayZoo argues that the jury was never instructed on the proper scope of the prior art in this case. *See Columbia Sportswear*, 80 F.4th at 1379-80 ("vacating the non-infringement judgment" because "the district court erred by failing to instruct the jury as to the scope of the . . . patent claim . . . and, relatedly, the proper scope of comparison prior art"). However, DeeJayZoo not only made no request for an instruction on the proper scope of the prior art to the D792 Patent, but it requested that no such instruction be given. *See* Dkt. 305 at 63 ("There is no need for this Court to instruct the jury as to the prior art they should consider or not consider. At most, the Court can define for the jury what prior art is and the date."). To the extent DeeJayZoo contends the comparison prior art evidence was inadmissible, DeeJayZoo does not identify any instance where it objected to the admissibility of any of Kitsch's prior art references, and certainly did not object on any reference on this basis. By contrast, the plaintiff in *Columbia Sportswear* objected to the defendant's prior art references and sought a jury

---

[6] Although copying and bad-faith intent are not relevant to infringement, they are relevant to willfulness. Willfulness, however, is not at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

instruction on the proper scope of prior art. 80 F. 4th at 1371-72.

DeeJayZoo argues that the jury did not have a legally sufficient evidentiary basis for its finding of non-infringement because Kitsch failed to show that the prior art references on which it relied were "noise reducing water resistant headwear cap[s]." Notice of Supplemental Authority at 2. Given the aforementioned dissimilarities between the D792 Patent and Kitsch's accused products, DeeJayZoo has not shown either that it is entitled to judgment as a matter of law or that the jury's verdict went against the clear weight of the evidence – even if the prior art references identified by Kitsch were not considered.

Further, if DeeJayZoo's position were adopted, the jury would not have a legally sufficient evidentiary basis to find for DeeJayZoo. The test from *Columbia Sportswear* "us[es] the same scope for anticipatory prior art and comparison prior art . . . ." 80 F. 4th at 1379. And even in design patent cases, "the same test must be used for both infringement and anticipation." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009). Thus, if DeeJayZoo could limit the D792 Patent to noise reducing and water resistant headwear to avoid Kitsch's comparison prior art, the same limit would apply to anticipation and infringement. DeeJayZoo has the burden to prove infringement, but has provided no evidence that any of the accused products had noise reducing or water resistant properties. Therefore, if the D792 Patent is limited to "noise reducing water resistant headwear cap[s]," Kitsch would be entitled to a judgment of non-infringement as a matter of law.

DeeJayZoo's position is also unpersuasive for an independent reason. "Judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Columbia Sportswear*, 80 F. 4th at 1375 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). "Factors that typically inform whether to apply the doctrine include: (1) whether a party's earlier and later positions are 'clearly inconsistent'; (2) whether the party 'succeeded in persuading a court to accept' the earlier position; and (3) whether the party would 'derive an unfair advantage or impose an unfair detriment' on the opposing party if not estopped." *Id.* (quoting *New Hampshire*, 532 U.S. at 750-51). DeeJayZoo argued at claim construction that, if it was determined "that the claim only covers 'noise-reducing' shower caps," this would "limit[]" the D792 Patent "to a functional feature of the article . . . ." Dkt. 45 at 11. Thus, DeeJayZoo claimed that the relevant article is a "shower cap" and whether it is "noise-reducing" is merely a functional feature of that article. DeeJayZoo's argument was successful. It was determined at claim construction that adopting Kitsch's position "would result in a comparison of functional similarity, i.e.[,] whether an alleged infringing product or prior art design is also 'noise-reducing,' not just a comparison of the ornamental design itself, would be required." Dkt. 56 at 16.[7]

DeeJayZoo now seeks to avoid Kitsch's prior art by arguing that the alleged prior art is neither noise reducing nor water resistant. Notice of Supplemental Authority at 2. If DeeJayZoo were successful in advancing this position, it would be getting "another bite at the trial apple." Kitsch would be significantly prejudiced if DeeJayZoo were permitted to have such a "do-over" because it would have to bear both the cost and uncertainty of a second trial. Thus, all three factors support the conclusion that DeeJayZoo is judicially estopped from arguing that the comparison prior art for the D792 Patent is limited to noise reducing and water resistant headwear.

---

[7] The parties were granted permission to revisit this issue through "an appropriate motion as to potential amendments to invalidity contentions." Dkt. 56 at 17. Neither party made such a motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

Finally, DeeJayZoo requests the opportunity to renew its motion *in limine* as to the admissibility of Choklat's testimony on the basis that his consideration of the prior art was not based on the standard in *Columbia Sportswear*. DeeJayZoo never objected to the definition of prior art used by Choklat prior to, or during trial, and it has not provided a sufficient basis to excuse the failure to preserve this objection. Also, as already stated, DeeJayZoo is estopped from changing its position that the relevant article of manufacture was not a noise reducing shower cap.

For the foregoing reasons, *Columbia Sportswear* does not warrant granting the Motion.

     5.    <u>Whether the Trademark Registration Should Be Canceled</u>

When the judgment in this matter was entered, "[t]he United States Patent & Trademark Office [was] directed to cancel U.S. Trademark Registration No. 5,208,472; provided, however, this portion of the judgment [was] stayed pending any appeals by Deejayzoo." Dkt. 355. DeeJayZoo contends that, even if the jury's verdict is undisturbed, this registration could not be canceled. The basis for DeeJayZoo's position is that the jury determined that the relevant Mark lacked secondary meaning at the time Kitsch's use began, but that such a finding does not compel a conclusion that the Mark lacks secondary meaning today. *See* Reply at 10.

DeeJayZoo contends that the jury "erred by considering secondary meaning at the time that Kitsch's [alleged] infringement began[.]" Dkt. 387 at 2. However, DeeJayZoo had the opportunity to object to the relevant jury instruction before it was given, and although it argued that the instruction was unnecessary, it never objected on the ground that this instruction was not an accurate statement of the law. Dkt. 305 at 86. Therefore, DeeJayZoo failed to preserve this claim of error. Moreover, DeeJayZoo's position lacks merit. "[I]n order to prevail on a claim of infringement, secondary meaning must have been acquired by *the date of first infringing use*. To the extent an alleged infringer challenges the present validity of the asserted trademark registration, validity depends on whether the mark had acquired secondary meaning as of *the date of registration*." *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1120 (Fed. Cir. 2018); *see also CG Roxane LLC v. Fiji Water Co. LLC*, 569 F. Supp. 2d 1019, 1032 (N.D. Cal. 2008) ("The user must show that secondary meaning existed prior to the date on which the defendant commenced using the same or similar mark.") (cleaned up). None of the cases cited by DeeJayZoo is inconsistent with *Converse* and *CG Roxane*. With respect to DeeJayZoo's trademark infringement claim, it was not error to adopt Kitsch's proposed instruction, which stated that the jury was to evaluate secondary meaning at the time Kitsch began using the Mark.

With respect to the validity of the Mark, it depends on whether the Mark had secondary meaning as of the date of registration, not as of today. Further, logically, if the Mark lacked secondary meaning when Kitsch began using it, it also lacked secondary meaning when the registration was issued. DeeJayZoo has not identified any way in which the Mark would have lost secondary meaning between the date the Mark was registered and the date Kitsch allegedly began infringing that Mark. Several courts have directed the USPTO to cancel a registration after it had determined that the Mark lacked secondary meaning, notwithstanding that time had elapsed between the date on which the party contesting the registration began using the relevant mark and the date on which it was determined that no secondary meaning had been acquired. *See, e.g., Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 424-25 (7th Cir.

Case 2:19-cv-02556-JAK-RAO   Document 389   Filed 12/21/23   Page 17 of 20   Page ID #:15186

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
|---|---|---|---|
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

2019); *Meth Lab Cleanup, LLC v. Bio Clean, Inc.*, 205 F. Supp. 3d 1243, 1253-54 (W.D. Wash. 2016); *cf. Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1021 (9th Cir. 2018) ("If a petition for cancellation is brought before the mark becomes incontestable, any ground that would have prevented registration in the first place qualifies as a valid ground for cancellation.") (cleaned up); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 946 (Fed. Cir. 2000) ("[A]ny ground that would have prevented registration in the first place qualifies as a valid ground for cancellation.").

For the foregoing reasons, DeeJayZoo's arguments do not warrant any amendment to the judgment.

### IV.     **Attorney's Fees Motion**

In patent cases, a reasonable attorney's fee may be awarded to the "prevailing party" in "exceptional cases." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Factors that may be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6. "The substantive strength of a party's litigating position can—i.e., whether it is objectively baseless— independently support an exceptional-case determination." *Nova Chemicals Corp. (Canada) v. Dow Chem. Co.*, 856 F.3d 1012, 1017 (Fed. Cir. 2017).

In Lanham Act matters, courts "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. Courts "interpret the fee-shifting provisions in the Patent Act, 35 U.S.C. § 285, and the Lanham Act in tandem." *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1180 (9th Cir. 2016). Indeed, "[t]he fee-shifting provisions in both acts are 'parallel and identical.'" *Id.* (quoting *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 720 (4th Cir. 2015)).

As a preliminary matter, Kitsch is the prevailing party. "The relevant inquiry . . . is not limited to whether a defendant prevailed on the merits, but also considers whether the district court's decision—'a judicially sanctioned change in the legal relationship of the parties'—effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016)). Kitsch succeeded in invalidating the "The Shower Cap Reinvented" Mark, avoiding a finding of infringement with respect to the "Shhhowercap" Mark, and avoiding a finding of infringement with respect to the D792 Patent. Kitsch is therefore the prevailing party.

Kitsch contends that DeeJayZoo's "shifting positions" make this case exceptional. Attorney's Fees Motion at 10. The Federal Circuit has held that a case may be exceptional when the losing party's "litigation positions, expert positions, and infringement contentions were a constantly moving target, a frustrating game of Whac-A-Mole throughout the litigation." *Oplus Techs., Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1374 (Fed. Cir. 2015); *see also In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 18-MD-02834-BLF, 2020 WL 5910080, at *20 (N.D. Cal. Oct. 6, 2020) (awarding fees where the losing party,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

among other things, "frequently changed its infringement positions to overcome the hurdle of the day"); *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388(NLH/KMW), 2016 WL 1259961, at *7 (D.N.J. Mar. 31, 2016) (awarding fees where the losing party "changed its positions back and forth to suit the argument of the day").

Kitsch identifies two alleged inconsistencies in the testimony of Jacquelin De Jesu. *First*, at her deposition, the following colloquy occurred:

> Q. Do you believe that a consumer can visually see the bow in the Kitsch design?
> A. No.

Dkt. 360-1 at 4. However, Ms. De Jesu's testimony at trial was different:

> Q. Do you believe that a consumer can visually see the bow in the Kitsch design. Yes or no?
> A. Yes. There is a bow on the Kitsch design.

Dkt. 360-2 at 5. *Second*, Ms. De Jesu gave the following testimony at her deposition:

> Q. Okay. So "The Showercap Reinvented" was something that you came up with, right?
> A. I did.
> Q. And you – why did you come up with or what was the purpose of coming up with that phrase?
> A. I mean, we make and sell waterproof turbans, the tag line is "The Showercap Reinvented." It felt like a good way to suggest what the – the product was.
> Q. Doesn't it describe what you were intending to do?
> A. No. As stated earlier, we're a female-focused design and innovation company and we sell waterproof turbans, so for me, those are substantially different things.

Dkt. 360-1 at 3. At trial, the following question and answer was stated on the record:

> Q. You used the phrase "The Showercap Reinvented" to describe the product you sell in the marketplace; correct?
> A. Yes.

Dkt. 360-2 at 3-4.

DeeJayZoo argues, without explanation, that there is no contradiction in Ms. De Jesu's testimony. This argument has limited force. With respect to the second alleged inconsistency, there is a difference between the questions that were asked. At her deposition, Ms. De Jesu was asked about how she would describe her intention with her product; at trial, she was asked about the language she used when marketing that product. Marketing language need not always describe the intention of the individual that designed the product. There is no inconsistency in the testimony that has been cited. With respect to the first alleged inconsistency, DeeJayZoo's argument is unpersuasive. Ms. De Jesu was asked the same question in her deposition and at trial, and her answers were clearly inconsistent. However, Kitsch's argument that this inconsistency makes this case exceptional is unpersuasive for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

several reasons.

*First*, the cases cited by Kitsch all involved repeated or frequent changes in position. Here, Kitsch has only identified one genuine inconsistency in DeeJayZoo's position.

*Second*, this inconsistency addressed a relatively minor issue. Design patent infringement is evaluated through the eyes of the hypothetical ordinary observer, rather than Ms. De Jesu. Kitsch contends that this inconsistency was a significant one because the Court cited Ms. De Jesu's statement that the bow was not visible in denying Kitsch's motion for summary judgment on design patent infringement. However, that Order cited a different portion of Ms. De Jesu's testimony where she explained that "the bow [was] almost completely blended in as camouflage on the pleats in the lines, [and] it's really hard to tell that it's even there." Dkt. 238 at 10; Dkt. 134-2 at 19. In the portion of the testimony cited in the Order, Ms. De Jesu acknowledged that she could "see the bow on the Kitsch shower cap." Dkt. 134-2 at 19. In addition, the Order relied on several images supporting Ms. De Jesu's position that the bow on the Kitsch product could be difficult to see. Dkt. 238 at 10; Dkt. 134-2 at 22. Even if Ms. De Jesu's deposition testimony had been identical to her trial testimony, the analysis of Kitsch's motion for summary judgment would not have changed.

*Finally*, it is not necessary to address DeeJayZoo's argument that any inconsistency in Ms. De Jesu's testimony occurred because she was under stress due to inappropriate physical contact by Jeremy Thurswell. Attorney's Fees Opposition at 4. Mr. Thurswell denies Ms. De Jesu's allegations and accuses her of inappropriate behavior toward him and his wife on a prior day. *Compare* Dkt. 372-1 (De Jesu Decl.) ¶¶ 3-7 *with* Dkt. 376 (Thurswell Decl.) ¶¶ 5-14. This factual dispute cannot be resolved based on what has been presented. However, because the inconsistency in Ms. De Jesu's testimony does not support a finding that this case is exceptional, this issue is not material.

### V.     Sealing Issues

At the hearing on the Attorney's Fees Motion, Kitsch requested that the portions of the briefing on the Attorney's Fees Motion addressing the alleged inappropriate behavior engaged in by Ms. De Jesu and Mr. Thurswell be stricken from the record. At the hearing, DeeJayZoo opposed Kitsch's request, but stated that the relevant material could be sealed. Kitsch did not object to sealing these materials. The parties' request to seal these materials is **GRANTED**. Dkts. 372 and 375 shall be sealed. There is a sufficient basis to exclude these materials from the general public; provided, however, this determination is without prejudice to a further review of the issue in response to a motion brought by a non-party to unseal these filings. Within 14 days of the issuance of this Order, the parties shall file redacted versions of these documents.

### VI.     Conclusion

For the reasons stated in this Order, the Motion is **DENIED**, and the Attorney's Fees Motion is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV19-02556 JAK (RAOx) | Date | December 21, 2023 |
| Title | Kitsch LLC v. Deejayzoo, LLC | | |

**IT IS SO ORDERED.**

                                                                                                              _____ : _____

Initials of Preparer    tj